**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Austin Chance Evans, | ) | |
| Plaintiff, | ) | No. CIV 23-132-TUC-CKJ |
| vs. | ) | **ORDER** |
| Megann McAllister, | ) | |
| Defendant. | ) | |

On May 10, 2023, this Court issued an Order which, *inter alia*, denied with leave to resubmit the Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) and the Complaint (Doc. 1). Plaintiff Austin Chance Evans ("Evans") has submitted a new Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 37) ("Application"), an Amended Complaint (Doc. 36), and a Motion to Submit Waiver of Summons (Doc. 38).

I. *Application to Proceed in District Court Without Prepaying Fees or Costs* (Doc. 37)

The Court may allow a plaintiff to proceed without prepayment of fees when it is shown by affidavit that he "is unable to pay such fees[.]" 28 U.S.C. § 1915(a)(1). Where an allegation of poverty is inaccurate and made in bad faith, dismissal with prejudice may be appropriate. *Newsome v. Loterzstain*, No. 219CV0307JAMEFBP, 2020 WL 4501813, at *2 (E.D. Cal. Aug. 5, 2020), report and recommendation adopted, No. 219CV0307JAMEFBP, 2020 WL 5412996 (E.D. Cal. Sept. 9, 2020), *citing Escobedo v. Applebees*, 787 F.3d 1226,

1   1234 (9th Cir. 2015).

2         Evan's original affidavit, dated March 17, 2023, indicated Evans expected to receive

3   $768.00 in the next month in gifts, had received an average of $2,768.00 in monthly gifts for

4   the past 12 months, and did not list any expenses. (Doc. 2). Evans' new affidavit in support

5   of his Application, dated May 11, 2023, indicates Evans does not expect any income for the

6   next month, received an average of $60.00 in monthly gifts for the past 12 months, and did

7   not list any expenses. (Doc. 37). Evans states he had incorrectly believed he was to list

8   annual amounts when completing the original form. The Court accepts Evans' explanation

9   for the contradictory information. The Court finds Evans is unable to pay the fees and will

10  grant the request.

11        However, the Court recognizes the Amended Complaint indicates that, in February

12  2023, Evans had more than one "staff." Evans is advised that, if the Court becomes aware

13  his allegation of poverty is untrue and has been made in bad faith, the Court will consider if

14  dismissal with prejudice of this action is appropriate.

15

16  II.  *Motion to Submit Proof of Service* (Doc. 38)

17        Evans requests to submit a waiver of summons from the attorney of Defendant

18  Megann McAllister's attorney.  Although Evans' Amended Complaint was not accepted by

19  the Court when the request was made, the Court herein accepts the Amended Complaint.

20  Therefore, the Court will grant this request.  Evans will be directed to file the Waiver of the

21  Service of Summons.

22

23  III.  *Screening Order*

24        As the Court previously stated, it is required to dismiss a case if the Court determines

25  that the allegation of poverty is untrue, 28 U.S.C. § 1915(e)(2)(A), or if the Court determines

26  that the action "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be

27  granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."

28  28 U.S.C. § 1915(e)(2)(B).  May 10, 2023, Order (Doc. 28, p. 4).  In this case, the Amended

Complaint is to contain a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed.R.Civ.P. 8(a); May 10, 2023, Order (Doc. 28, p. 5), and must set forth sufficient facts that serve to put defendants on notice as to the nature and basis of the claim(s).

Further, the United States Supreme Court has determined that, in order to survive a motion to dismiss for failure to state a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its facts." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); May 10, 2023, Order (Doc. 28, pp. 5-6). As the Ninth Circuit has stated:

> "A claim has facial plausibility," the Court explained, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129 S.Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

> In sum, for a complaint to survive a motion to dismiss, the non-conclusory "factual content," and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief. *Id.*

*Moss v. U.S. Secret Service*, 572 F.3d 962 (9th Cir. 2009); May 10, 2023, Order (Doc. 28, p. 6). Further, this Court takes as true all allegations of material fact and construes them in the light most favorable to Evans. *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003); May 10, 2023, Order (Doc. 28, p. 6). Nonetheless, the Court does not accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations. *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981); May 10, 2023, Order (Doc. 28, pp. 6-7).

IV. *Fraud*

Evans alleges fraud as a claim against McAllister. To state a claim of fraud, a plaintiff must allege that a defendant made "a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon

1    the representation in a reasonably contemplated manner, and that the hearer, ignorant of the

2    falsity of the representation, rightfully relied upon the representation and was thereby

3    damaged." *Dawson v. Withycombe,* 163 P.3d 1034, 1046 (Ariz.App. 2007).

4        Evans alleges McAllister promised Evans "a place to live in a 2 bedroom apartment

5    along with all expenses paid in [Coeur d'Alene, Idaho] for 2 years." Am. Complaint (Doc.

6    36, p. 1).  Evans also alleges McAllister promised Evans "a place to stay in Las Vegas,

7    NV[.]" *Id.* at 2.  Evans alleges he purchased multiple items for McAllister and implies such

8    purchases were made in reliance on the promises given to him by McAllister.  The facts

9    alleged by Evans do not state a claim for fraud.  Rather, Evans does not include any

10    allegation that McAllister made "a false and material representation, with *knowledge* of its

11    falsity or *ignorance* of its truth, with *intent* that the hearer would act upon the representation

12    in a reasonably contemplated manner," *Dawson*, 163 P. 3d at 1046, *emphasis added*, as

13    opposed to McAllister changing her mind.  Indeed, Evans alleges a relationship existed for

14    nearly three years, including physical intimacy at certain times of the relationship.  The

15    factual allegations do not "raise a right to relief above the speculative level." *Twombly*, 550

16    U.S. at 570.    Further, the factual allegations are insufficient for the Court to draw a

17    reasonable inference that McAllister acted with knowledge of the falsity or ignorance of the

18    truth of the promises, with the intent Evans would reasonably act upon the representations.

19    The Court finds it appropriate to dismiss the fraud claim for failure to state a claim upon

20    which relief may be granted.

21

22    V. *Defamation*

23        Evans asserts a claim of defamation in his Complaint.  "Oversimplifying, libel is a

24    written or visual defamation, while slander is an oral defamation."  *Boswell v. Phoenix*

25    *Newspapers, Inc.*, 152 Ariz. 1, 6 n. 4, 730 P.2d 178 n. 4 (App. 1985).  "'One who publishes

26    a false and defamatory communication concerning a private person . . . is subject to liability,

27    if, but only if, he (a) knows that the statement is false and it defames the other, (b) acts in

28

1    reckless disregard of these matters, or (c) acts negligently in failing to ascertain them.'"

2    *Desert Palm Surgical Grp., P.L.C. v. Petta*, 343 P.3d 438, 449 (Ariz.App. 2015), *citations*

3    *omitted*.

4         Evans has alleged that, in February 2023, McAllister published statements via emails

5    to Evans' staff referring to Evans' "stupid" rules of Evans, Evans threatening CPS and

6    lawsuits, requesting information about Evans for her protection against him, Evans

7    contacting or doxing McAllister, and Evans harassing McAllister.  Evans also alleges

8    McAllister was untruthful and alleged Evans was stalking her in obtaining a protection

9    order.[1]

10        As to the allegations regarding email statements and statements related to the

11   protection order, the Court finds Evans has alleged false and defamatory communications by

12   McAllister concerning Evans.  Further, Evans has adequately alleged McAllister knew the

13   statements were false and defamed Evans, or acted in reckless disregard of these matters or

14   acted negligently in failing to ascertain them.  The Court finds Evans has stated a libel claim

15   upon which relief may be granted against McAllister for the email statements to staff.

16        However, as to the statements made in obtaining a protective order, the Court finds

17   McAllister is immune from liability for these statements based on the litigation privilege.

18   *Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 WL 6320968, at *2 (Ariz. Ct. App. Nov. 26,

19   2019); *Ledvina v. Cerasani*, 213 Ariz. 569, 571, ¶ 4 (App. 2006) ("When statements are

20   absolutely privileged, the speaker is immune from civil liability and courts do not inquire into

21   the declarant's motives or whether the statements were made in good faith."); *see also* May

22   10, 2023, Order (Doc. 28, p. 8).  The Court finds Evans has failed to state a defamation claim

23   against McAllister for any statement made in writing or orally in the order of protection

24   proceedings.

25

26

27         [1]It is not clear if these allegations were made in documents submitted to the court or
28   orally in court proceedings.

VI. *Emotional Distress*

Evans purports to state a claim for emotional distress, based on alleged untrue statements made by McAllister during the order of protection proceedings and sending messages to Evans' staff.  Evans asserts he has been extremely distraught and on some days he is unable to keep food down, unable to sleep, and unable to enjoy his usual pastimes.  He does not clarify if he is seeking to state a claim for intentional or negligent infliction of emotional distress.

To the extent Evans' claim is based on statements made during the order of protection proceedings, the Court finds the Court finds McAllister is immune from liability for these statements based on the litigation privilege. *Taraska v. Brown*, No. 1 CA-CV 18-0714, 2019 WL 6320968, at *2 (Ariz. Ct. App. Nov. 26, 2019);  *Drummond*, 127 Ariz. at 125 ("Defamatory statements contained in pleadings are absolutely privileged if they are connected with or have any bearing on or are related to the subject of inquiry." *Id*. (emphasis added).  The Court finds Evans has failed to state an emotional distress claim against McAllister for any statement made in writing or orally in the order of protection proceeding.

To state a claim for intentional infliction of emotional distress, a plaintiff must allege (1) the conduct of defendant was "extreme" and "outrageous," (2) defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct, and (3) severe emotional distress did occur as a result of defendant's conduct. *Citizen Publishing Co. v. Miller*, 115 P.3d 107, 111 (Ariz. 2005); *Wells Fargo Bank v. Arizona Laborers, Teamsters, and Cement Masons Local No. 395 Pension Trust Fund*, 38 P.3d 12 (Ariz. 2002) (discussing difference between negligent and intentional torts).  The acts must be "'so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community.'" *Mintz v. Bell Atlantic Systems Leasing International, Inc.*, 905 P.3d 559, 563 (Ariz.App. 1995), *quotation omitted.*  Further, the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result

1    from his conduct.  *Ford v. Revlon*, 734 P.2d 580 (Ariz. 1987).

2         A claim for negligent infliction of emotional distress requires that the "the emotional

3    distress inflicted 'must be manifested as a physical injury." *Rowland v. Union Hills Country*

4    *Club*, 157 Ariz. 301, 304, 757 P.2d 105, 108 (App. 1988).

5         Evans bases his emotional distress claim on the messages McAllister sent to his staff.

6    The messages included reference to obtaining an order of protection against Evans (including

7    asking email recipient to contact McAllister on Evans' behalf and Evans doxxing

8    McAllister), stupid rules, and harassment.  The messages also requested the recipient to

9    forward screenshots to her if the recipient saw Evans sending, mentioning, or threatening

10   (CPS, lawsuits) McAllister.  Evans asserts he is seeking expert treatment.  As the Court

11   discussed in its May 10, 2023, Order, it is not aware of any Arizona case that discusses

12   whether or when "breaking up" a relationship may constitute extreme or outrageous conduct.

13   However, in  *Cochran v. Cochran*, 65 Cal.App.4th 488 (App. 1998), the feuding that

14   followed a "long-standing intimate relationship" often included "an exchange of hostile

15   unpleasantries which are intended to sting whoever sits at the delivery end."  *Cochran*, 65

16   Cal.App.4th at 498.  In that case a pattern of threats was followed by a death threat.  *Id*. at

17   498-99.  The court found that the threats were not actionable because they were "the kind of

18   boastful, peevish, spleen-venting" threats "which frequently occurs between the parties to an

19   intimate relationship gone bad."  *Id*. at 499.  However, there were no allegations that the

20   person ever tried to follow through on any of the threats.  *Id*.; *see also Guzman v. Finch*, No.

21   19CV412-MMA (MDD), 2019 WL 3766659, at *5 (S.D. Cal. Aug. 9, 2019) (where

22   defendant acted on threats (i.e., threatened plaintiff's "career, blocked [plaintiff's] mother's

23   phone number from her phone, prohibited [plaintiff] from speaking to her best friend,

24   employed psychological tactics to control [plaintiff], raped [plaintiff], and grabbed

25   [plaintiff's] arms and yanked her with so much force that [plaintiff] fell and broke her

26   fibula") and where plaintiff allegedly fell into a deep depression and attempted to commit

27   suicide, dismissal of claim was not appropriate).  Indeed, one court has quoted from a

28

treatise:

> Most [relationship break-ups] do not include conduct that will support an action for emotional distress. While most [break-ups] see their share of insults, indignities, threats, annoyances and petty oppressions as well as transient and trivial mental anguish, the Restatement expressly excludes such things from forming the basis for liability.

Bradley A. Case, Note, *Turning Marital Misery into Financial Fortune: Assertion of Intentional Infliction of Emotional Distress Claims by Divorcing Spouses*, 33 U. Louisville J. Fam. L. 101, 115 (1994).

*McCulloh v. Drake*, 2001 WY 56, ¶ 24, 24 P.3d 1162, 1169 (Wyo. 2001); *see also Ford v. Revlon*, 734 P.2d 580, 585 (Ariz. 1987) (adopting the Restatement articulation of the standard of liability for intentional infliction of emotional distress claims); *Ball v. Prentice*, 781 P.2d 628, 630 (Ariz.App. 1989) ("Arizona courts have permitted recovery for negligent infliction of emotional distress even without impact if other criteria appear, and have adopted the law as provided by Restatement (Second) of Torts, §§ 313, 436 and 905 (1965).").

Moreover, the Court is not aware of any case in the United States that has determined that a defendant telling someone a plaintiff had threatened to dox a defendant, contact CPS, or file a lawsuit, or informing someone defendant had obtained a protection order constitutes extreme or outrageous conduct. In this case, the Complaint contains less actionable allegations that in *Cochran*. Simply put, the Court does not find the conduct alleged by Evans to be extreme or outrageous. *See e.g.*, *Pyle v. Pyle*, 11 Ohio App. 3d 31, 34, 463 N.E.2d 98, 104 (1983) (in context of divorce proceeding, party suffered headaches, stomach aches, and had trouble sleeping; however, the "law cannot protect against or provide damages for all of the mental anguish which may arise from the emotionally fraught atmosphere of" a relationship break-up); Res. (2nd) of Torts § 46 (May 2023) ("There is no occasion for the law to intervene in every case where some one's feelings are hurt.").

Notably, Evans is not alleging McAllister took the alleged actions (e.g., threaten to contact CPS, threaten to dox Evans, harass Evans). Rather, Evans is alleging McAllister told others that Evans took the alleged actions. *See e.g., id.* ("there may perhaps be situations in which the actor is privileged to resort to extreme and outrageous words, or even acts, in

self-defense against the other, or under circumstances of extreme provocation which minimize or remove the element of outrage").  While such statements may provide a basis for defamation (as previously discussed), the allegations that McAllister made such statements in the context of a relationship breakup are not extreme and outrageous.

The Court finds Evans has failed to state an emotional distress claim upon which relief may be granted.

VII.  *Subject Matter Jurisdiction*

Evans' Amended Complaint attaches itemized damages.  However, in light of the dismissal of the fraud and emotional distress claims, it is not clear if Evans' Amended Complaint establishes subject matter jurisdiction.  *See* 28 U.S.C. § 1332.  Should McAllister not raise this issue in responding to the Amended Complaint, the Court will direct the parties to brief this issue.   *See* Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Sauk-Suiattle Indian Tribe v. City of Seattle*, 56 F.4th 1179, 1189, n. 14 (9th Cir. 2022).

VI.  *Conclusion*

The Court has determined Evans has stated a claim for defamation based on the emails.  However, the Court has found Evans has failed to state claims upon which relief may be granted for fraud, defamation based on statements made in the order of protection proceedings, and emotional distress.  The Court will direct McAllister to answer or otherwise respond to the defamation claim based on the emails alleged in the Amended Complaint.

Accordingly, IT IS ORDERED:

1.      The Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 37) is GRANTED.

2.      The  Motion to Submit Waiver of Summons (Doc. 38) is GRANTED.  Evans shall file the Waiver of the Service of Summons completed by counsel for McAllister.

3.     If Evans does not file the Waiver of the Service of Summons completed by counsel for McAllister, Evans shall complete service of the Summons and Amended Complaint on McAllister within 90 days of the filing of the Complaint or within 60 days of the filing of this Order, whichever is later.  If McAllister fails to complete service, the action may be dismissed as to any non-served defendant. Fed.R.Civ.P. 4(m); LRCiv 16.2(b)(2)(B)(ii).

4.     Evans' claims for fraud, defamation based on statements made in obtaining a protective order, and emotional distress are DISMISSED.

5.     McAllister must answer or otherwise respond to the defamation claim based on McAllister's emails alleged in the Amended Complaint.

DATED this 13th day of June, 2023.


_____
Cindy K. Jorgenson
United States District Judge