**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Austin Chance Evans, ) | |
| Plaintiff, ) | No. CIV 23-132-TUC-CKJ |
| vs. ) | **ORDER** |
| Megann McAllister, ) | |
| Defendant. ) | |

Pending before the Court is the Motion for Award of Attorney's Fees and Costs (Doc. 54) filed by Defendant Megann McAllister ("McAllister"). Plaintiff Austin Chance Evans ("Evans") has not filed a response.

I.  *Local Rule 7.2(i)*

By failing to respond to the motion, Evans is deemed to have consented to the granting of the motion and the Court may dispose of the motion summarily.  L.R.Civ. 7.2(i).  The Court finds it appropriate to grant the motion.  Nonetheless, the Court will also consider the merits of the motion.

II.  *Procedural History*

On March 17, 2023, Evans filed a pro se Complaint (Doc. 1) and a number of other motions.  *See* Application to Proceed in District Court Without Prepaying Fees or Costs (Doc. 2) ("Application"); Motion to Allow Electronic Filing by a Party Appearing Without an Attorney and Supporting Information (Doc. 3); Motion to Reclassify the Case (Doc. 6);

Motion to Submit Records (Doc. 7); Motion for Default Judgment (Doc. 8); Motion for Referral to Prosecutor's Office (Doc. 9); Motion to Submit Proof of Service (Doc. 11); Request by Non-Prisoner Pro Se Party for Electronic Noticing (Doc. 18); Motion to Dismiss Motions/Order (Doc. 23).  On April 27, 2023, McAllister also filed motions in this case.  *See* Amended Motion to Dismiss Complaint for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, Improper Venue, and Failure to State a Claim in Which Relief May Be Granted Motions (Doc. 15); Motion to Strike (Doc. 16); Motion for Order Declaring Plaintiff Vexatious Litigant (Doc. 17).

On May 10, 2023, this Court issued an Order which, *inter alia*, denied with leave to submit a new Application, dismissed the Complaint, granted leave to Evans to submit an amended complaint, and denied or dismissed the remaining motions.

On May 15, 2023, Evans filed a new Application and an amended Complaint.  The Court permitted Evans to proceed without payment of fees or costs, found Evans had stated a claim for defamation based on emails, and dismissed the remaining claims.  Additionally, the Order advised the parties it would consider the issue of subject matter jurisdiction.

On June 22, 2023, McAllister filed a Motion to Dismiss Amended Complaint for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction, and Improper Venue ("Motion to Dismiss for Lack of Jurisdiction") (Doc. 41).  Evans filed a response (Doc. 46) and McAllister filed a reply (Doc. 45).  Evans has also filed a Motion to Strike the Motion to Dismiss for Lack of Jurisdiction (Doc. 47).

Additionally, on June 30, 2023, Evans filed a Motion to Dismiss (Doc. 43); Evans requested the case be dismissed without prejudice.  In August 2023, Evans also filed a Motion for Change of Venue (Doc. 48) and a Motion Requesting Motion to Dismiss be Disregarded (Doc. 49).  McAllister filed responses to the Motion for Change of Venue and Motion Requesting Motion to Dismiss be Disregarded (Docs. 50 and 51).  Additionally, McAllister addressed Evans' Motions to Dismiss in her reply to the Motion to Dismiss for Lack of Jurisdiction (Doc. 45).

On September 1, 2023, this Court issued an Order which, *inter alia*, denied Evans'

1   Motion Requesting Motion to Dismiss be Disregarded (Doc. 49) and granted Evans' Motion

2   to Dismiss (Doc. 43).   The Court also denied as moot McAllister's Motion to Dismiss

3   Amended Complaint for Lack of Personal Jurisdiction, Lack of Subject Matter Jurisdiction,

4   and Improper Venue (Doc. 41), Evans' Motion to Strike the Motion to Dismiss for Lack of

5   Jurisdiction (Doc. 47), and Evans' Motion for Change of Venue (Doc. 48).   The Court

6   dismissed the action pursuant to Fed.R.Civ.P. 41(a)(1) and ordered McAllister could submit

7   a motion for attorney's fees and costs.

8          On September 8, 2023, McAllister filed the pending Motion for Award of Attorney's

9   Fees and Costs (Doc. 54).   Evans has not filed a response.

10

11  III.  *Motion for an Award of Attorney's Fees and Costs* (Doc. 54)

12         McAllister seeks an award of attorney's fees in the amount of $8,330.00 and costs in

13  the amount of $7.46.   In support of her motion, McAllister asserts:

14         •      Evans engaged in vexatious and harassing litigation conduct:  filing motions

15                to submit discovery at an improper stage which related to alleged evidence tampering

16                using an inapplicable criminal statute (Doc. 7), for an entry of default based on

17                alleged evidence tampering prior to any finding by the Court of such behavior (Doc.

18                8), requesting that an inapplicable criminal statute be added as a claim to the litigation

19                (Doc. 6), requesting this Court impermissibly act as a conduit in referring McAllister

20                for criminal charges.

21         •      Following the break-up of a romantic relationship, McAllister obtained a Order

22                of Protection against Evans.

23         •      Evans requested associates contact Evans to inform her that he intended to

24                contact CPS or file lawsuits against her if McAllister did not contact Evans.  Motion,

25                Ex. A.

26         •      Prior to and while litigating this case and two others initiated by Evans in

27                Idaho, Evans used Twitter (nka X) to make what McAllister asserts are veiled or

28

direct threats to and manipulate McAllister.  *Id*. at Ex. B ("Bun bun time . . . Remember you knew the consequences.", Ex. C ("Well remember bun bun, I still love you but you are not giving me another choice."), Ex. D (Evans referring to lawsuits against McAllister as "war."), Ex. E (Evans referring to a lawsuit as a "love letter"), Ex. F (Evans posted a picture of McAllister's application for a protection order (in which she stated Evans threatened to file multiple lawsuits against her), stating "It's almost like that's not a threat since it's the 7th amendment. And two that piece of paper didn't protect you from a lawsuit."), Ex. G ("2 lawsuits, 2 pending. Lets go."), Ex. H (Evans posted the song "Caliban – Song About Killing" and stated the song represented him "metaphorically in court."), Ex. I ("I think, I will sue for my Skye figurine"), Ex. J ("Sue them, sue them all"), Ex. K (Evans posting a video from The Dark Knight movie, which showed the Joker firing a gun at Batman, with the statement, "Come on octoberwinters[,]" which is a username McAllister uses), and Ex. Y ("And bun bun this is only fueling me. Now that you fucked up my  birthday, ya, that's not good.").

•     Evans also tweeted about the litigation.  *Id*. at Ex. L ("Hm, it's almost like it would have been cheaper than court."), Ex. M ("Remember in court I win financially either way."), Ex. N ("[Breathe] and sue."), Ex. O ("…sue may take up to 1-5 years (2-5 if a jury trial)"); ("Figured out stage 2 appeal, that lasts 1-2 years. (1st appeal in circuit court), then the US supreme court can be as little as a month to over a year. Okie dokie."); ("I'm ready for 7+ years, are you?"), and Ex. P ("Am forgiving but haven't been asked. Also 100K-500K within 7 years to spend is so steep."), Ex. R ("People don't seem to know they can drop a protection order without any fault/consequences to them."), Ex. T ("Apparently two lawsuits are not enough for you, so you get a third. And yes this is going to keep going."), Ex. U ("New partner: 'What do you do for a living?'  Me: 'Civil law, I file complaints.'"), Ex. X ("Hm, offer is valid for 30 days. Drop the order, I drop the case in relation to said order. Then

1  modify my order to open a line of communication."), Ex. Z ("Medical people are

2  weird 'What is your motivation?'  Me:  "Revenge."'),[1] Ex. AA ("time to file the

3  defamation in another court.  Oh I wonder what court that'll be bun bun"), and Ex. AB

4  ("The bun bun not taking the offer, will be looking at moving the defamation case to

5  the bun bun state.")

6  •      Further, Evans tweeted about what appears to be his opinion as to his financial

7  risk in suing McAllister:  Ex. Q ("If an attorney is telling you you'll get money out of

8  someone who's not working, they're full of shit. Anyone will tell you that."), Ex. S

9  (Evans posted a pie chart which showed a 99% slice labeled as "Your cost" and a 1%

10  slice labeled as "My cost."), Ex. W ("Bun bun attorney, wanting money out of

11  someone who does not have the money. Hilarious. Also all my assets were sold/traded

12  before the lawsuits began.").

13  Motion (Doc. 54, pp. 3-8).  McAllister states additional tweets can be provided upon request

14  or may be viewed on X under @NommerofCookies.  *Id.* at p. 5, n. 3.

15

16  IV. *Fed.R.Civ.P. 54 and Controlling Authority*

17  McAllister seeks attorney's fees pursuant to Fed.R.Civ.P. 54.  Such a motion must be

18  made within 14 days of entry of judgment.  Fed.R.Civ.P. 54(d)(2)(A); *see also* LRCiv

19  54.2(b).  The Court finds McAllister's Motion is timely.

20  The Rule also requires the request specify the judgment, the amount request, and the

21  statute, rule, or other grounds entitling a movant to an award of attorney's fees.  The Court

22  finds McAllister's Motion complies with this requirement.

23  As this action is a diversity action, "the question of attorney's fees is governed by state

24  law." *Klopfenstein v. Pargeter*, 597 F.2d 150, 152 (9th Cir. 1979).

25  Additionally, a prevailing party is allowed an award of costs.  Fed.R.Civ.P. 54(d)(1);

26

27  ---

28  [1]McAllister presumes the revenge against McAllister is for obtaining an Order of
Protection against Evans and ending their romantic relationship.

- 5 -

1  *see also* LRCiv 54.1(d), A.R.S. § 12-341.

2

3  V.  *Fed.R.Civ.P. 41(a)(1) and Ariz.R.Civ.P. 41(a)*

4          The rules governing voluntary dismissals do not address whether a voluntary dismissal

5  precludes an award of attorneys' fees.  McAllister argue neither the federal rule or its history

6  suggest "the rule was intended to reward a plaintiff for ending his case early by shielding him

7  from the liability of attorneys' fees."  Motion (Doc. 54, p. 10), *citing Cooter & Gell v.*

8  *Hartmarx Corp.*, 496 U.S. 384, 397 (1990) ("Rule 41(a)(1) was not designed to give a

9  plaintiff any benefit other than the right to take one such dismissal without prejudice"); *Bldg.*

10  *Innovation Indus., L.L.C. v. Onken*, 473 F.Supp.2d 978, 983 (D.Ariz.2007) (rejecting

11  argument that Fed.R.Civ.P. 41(a)(1) deprived court of jurisdiction to consider attorneys' fees

12  request "because it would effectively transform a rule designed to restrict plaintiffs into a

13  vehicle by which plaintiffs may evade otherwise appropriate sanctions and costs).

14          Indeed, relying on this same authority, as well as additional authority, the Court of

15  Appeals of Arizona has considered the history of the rule and determined that, "[g]iven the

16  purpose of [Fed.R.Civ.P.](a) and in light of [our . . . interpretation of the federal rule and its

17  history], we hold that [plaintiff's] voluntary dismissal pursuant to Rule 41(a)(1) did not

18  preclude the [] court from subsequently entering an award of attorneys' fees in favor of the

19  [defendant].  *Vicari v. Lake Havasu City*, 213 P.3d 367, 373 (Ariz.App. 2009), *footnote*

20  *omitted*.

21          The Court finds neither Fed.R.Civ.P. 41(a) nor Ariz.R.Civ.P. 41 preclude an award

22  of attorneys' fees in this case.

23

24  VI.  *Statutory Authority for Award of Attorneys' Fees*

25          "In the absence of statute or contract, ordinary litigants are not liable for attorney's

26  fees and expenses of litigation inflicted upon an adversary[.]" *Whitestone v. Town of S.*

27  *Tucson*, 410 P.2d 116, 118 (Ariz.App. 1966), *citing Colvin v. Superior Equipment Co.*, 392

28

1   P.2d 778 (Ariz. 1964).[2]

2

3           A. *A.R.S. § 12-341*

4           Citing to A.R.S. § 12-341, McAllister argues an award of attorney's fees is

5   discretionary under Arizona law.  The title of that statute is "§ 12-341. Recovery of costs"

6   and states, "The successful party to a civil action shall recover from his adversary all costs

7   expended or incurred therein unless otherwise provided by law."  The plain language of the

8   statute only applies to costs and not attorney's fees.

9           Additionally, none of the cases cited by McAllister in this portion of her Motion rely

10  on A.R.S. §12-341 for the authority to award attorney's fees.  *See Newbery Corp. v.*

11  *Fireman's Fund, Ins. Co.*, 95 F.3d 1392 (9th Cir. 1996) (relying on A.R.S. §12-341.01);

12  *Owner-Operator Independent Drivers Association v. Pacific Financial Association, Inc.*,

13  388 P.3d 556 (Ariz. 2017) (award of attorney's fees was an error where claim did not arise

14  out of contract); *Balestrieri v. Balestrieri*, 300 P.3d 560 (Ariz.App. 2013) (attorney's fees

15  sought in breach of contract claim); *Am. Power Prods v. CSK Auto, Inc.*, 396 P.3d 600 (Ariz.

16  2017) (attorney's fees sought in breach of contract claim; Rule 68 "costs" do not include

17  attorney's fees); *McAlister v. Citibank*, 829 P.2d 1253 (Ariz.App. 1992) (costs awarded

18  pursuant to A.R.S. § 12-341; award of attorney's fees arising out of contract appropriate

19  under A.R.S. § 12-341.01); *Osuna v. Wal-Mart Stores, Inc.*, 151 P.3d 1267 (Ariz.App. 2007)

20  (attorney's fees sought under A.R.S. § 12-341.01); *Callanan v. Sun Lakes Homeowners' Ass'n*

21  *No. 1, Inc.*, 656 P.2d 621 (Ariz.App. 1982) (attorney's fees pursuant to former A.R.S. §10-

22  049);  *Britt v. Steffen*, 205 P.3d 357 (Ariz.App. 2008) (attorney's fees sought pursuant to

23  _____

24          [2]Evans included a breach of oral contract claim in his original Complaint (Doc. 1).
    Additionally, Evans' Civil Cover Sheet (Doc. 1-1) states the nature of the suit includes "Other
25  Contract" and briefly describes the cause as "Defendant commit[t]ed:  fraud, defamation, &
    breaking contract[.]"  A.R.S. § 12-341.01 provides statutory authority for an award of
26  attorney's fees in a contested action arising out of a contract.  However, Evans did not include
    a breach of oral contract in his amended Complaint and McAllister has not requested an
27  award of attorney's fees pursuant A.R.S. § 12-341.01.
28

A.R.S. § 12-341.01); *RT Automotive Center, Inc. v. Westlake Services, LLC*, 509 P.3d 399 (Ariz.App. 2022)) (attorney's fees award pursuant to A.R.S. § 12-341.01).

Further, McAllister has not provided any authority that "costs" as contemplated by A.R.S. § 12-341 includes attorney's fees. The Court finds McAllister is not entitled to an award of attorney's fees pursuant to A.R.S. § 12-341.

B. *A.R.S. § 12-349*

Additionally, McAllister asserts an award of attorney's fees is appropriate in this case because Evans brought the suit without substantial justification and for purposes of harassment. The statute provides:

A. Except as otherwise provided by and not inconsistent with another statute, in any civil action commenced . . . in a court of record in this state, the court shall assess reasonable attorney fees, expenses . . . against an attorney or party . . . if the attorney or party does any of the following:

1. Brings or defends a claim without substantial justification.

2. Brings or defends a claim solely or primarily for delay or harassment.

* * * * *

* * * * *

C. Attorney fees shall not be assessed if after filing an action a voluntary dismissal is filed for any claim or defense within a reasonable time after the attorney or party filing the dismissal knew or reasonably should have known that the claim or defense was without substantial justification.

* * * * *

F. For the purposes of this section, "without substantial justification" means that the claim or defense is groundless and is not made in good faith.

A.R.S. §12-349. "Groundlessness is determined objectively whereas harassment and bad faith are subjective determinations." *Rogone v. Correia*, 335 P.3d 1122, 1129 (Ariz.App. 2014). The Court is to set forth specific reasons for the award. A.R.S. §12-350. Those reasons may include the following factors:

1. The extent of any effort made to determine the validity of a claim before the claim was asserted.

- 8 -

2. The extent of any effort made after the commencement of an action to reduce the number of claims or defenses being asserted or to dismiss claims or defenses found not to be valid.

3. The availability of facts to assist a party in determining the validity of a claim or defense.

4. The relative financial positions of the parties involved.

5. Whether the action was prosecuted or defended, in whole or in part, in bad faith.

6. Whether issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict.

7. The extent to which the party prevailed with respect to the amount and number of claims in controversy.

8. The amount and conditions of any offer of judgment or settlement as related to the amount and conditions of the ultimate relief granted by the court.

A.R.S. § 12-350.

In this case, the Court screened Evans' initial Complaint and advised Evans of the requirements to state a claim, advised Evans of possible legal theories which could preclude a claim, and dismissed the claims/complaint with leave to amend.  Evans then filed an amended Complaint.  The Court will discuss Evans' claims.

Evans included a defamation claim in both his original and amended Complaints. Although the Court advised Evans in its original screening order of the litigation privilege, which provides absolute protection for statements made by parties in litigation, Evans again attempted to set forth a defamation claim in his amended Complaint as to statements made by McAllister during litigation.  This claim was ultimately dismissed.  However, the Court concluded Evans had set forth a claim upon which relief could be granted as to statements made by McAllister in emails to staff.

Despite being advised of the elements of a fraud claim and the requirement a fraud claim be pleaded with particularity, Evans included a fraud claim in his amended Complaint. However, Evans failed to allege McAllister made "a false and material representation, with knowledge of its falsity or ignorance of its truth, with intent that the hearer would act upon the representation in a reasonably contemplated manner[.] *Dawson v. Withycombe*, 163 P.3d

1034, 1046 (Ariz.App. 2007). Indeed, the factual allegations were insufficient for the Court to draw a reasonable inference that McAllister acted with knowledge of the falsity or ignorance of the truth of the promises, with the intent Evans would reasonably act upon the representations, as opposed to McAllister changing her mind about continuing in a personal relationship with Evans.

Similarly, the Court in its original screening order advised Evans of the requirements for both negligent and intentional infliction of emotions distress. In screening Evans' amended Complaint, the Court again found Evans had failed to state a claim upon which relief could be granted.

Again, the Court advised Evans of the requirements for a breach of contract claim in its original screening order. Evans did not include this claim in his amended Complaint.

It appears Evans made some effort to reduce the number of claims because he did not include a breach of contract claim in his amended Complaint. Moreover, although the Court discussed the requirements to state the claims, Evans re-alleged the defamation (as to statements made by McAllister during litigation), fraud, and emotional distress claims. However, this is not out of the normal practice for *pro se* parties, especially in light of the fact that *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010), *quoting Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

The Court cannot ascertain the relative financial positions of the parties involved. Although the Court granted Evans *in forma pauperis* status, statements made by him indicate his financial status may be different than he asserts. *See* Motion, Ex. W (". . . all my assets were sold/traded before the lawsuits began."). Further, there is no information before the Court as to the financial status of McAllister.

It does not appear significant issues of fact determinative of the validity of a party's claim or defense were reasonably in conflict. Further, because the claims were ultimately dismissed, McAllister is the prevailing party.

As to whether the action was prosecuted, in whole or in part, in bad faith, the Court considers the statements made by Evans through social media. Evans described the litigation as war, made threatening/taunting/gloating statements to McAllister, and pointed out that the protection order does not protect against a lawsuit. Evans made statements about lengthy litigation and his expected low risk of costs compared to McAllister. *See e.g.* Motion, Ex. O (I'm ready for 7+ years, are you?"), Ex. P ("Am forgiving but haven't been asked. Also 100K-500K within 7 years to spend is so steep."), Ex. S (Evans posted a pie chart which showed a 99% slice labeled as "Your cost" and a 1% slice labeled as "My cost."), Ex. W ("Bun bun attorney, wanting money out of someone who does not have the money. Hilarious. Also all my assets were sold/traded before the lawsuits began.").

Evans also made statements regarding litigation that appear to be harassing and taunting. *See* Motion, Ex. T ("Apparently two lawsuits are not enough for you, so you get a third. And yes this is going to keep going."), Ex. U ("New partner: 'What do you do for a living?' Me: 'Civil law, I file complaints.'"), Ex. Z ("Medical people are weird 'What is your motivation?' Me: "Revenge.'"), Ex. AA ("time to file the defamation in another court. Oh I wonder what court that'll be bun bun"), and Ex. AB ("The bun bun not taking the offer, will be looking at moving the defamation case to the bun bun state.")

1. *12-349.A.1.*

In light of the Court determining Evans had ultimately stated a defamation claim and Evans' Complaints being subject to a standard less stringent that one required of an attorney, the Court does not find the Complaint/claims were groundless. Because claim(s) without substantial justification pursuant to A.R.S. § 12-349.A.1 must be both groundless *and* not made in good faith, A.R.S. § 12-349.F, the Court finds Evans did not bring claims without substantial justification. An award of attorneys' fees pursuant to A.R.S. § 12-349.A.1. is not appropriate.

2. *12-349.A.2.*

Evans statements clearly exhibit a harassing intent to proceed with litigation against

- 11 -

1 McAllister.  Further, in light of his expressed interest in the litigation lasting seven or more

2 years, Evans exhibits an intent to delay.  Further, Evans' statements show the claims were

3 filed and maintained in response to a relationship breakup and/or an order of protection.  *See*

4 Motion, Ex. A (Evans requested associates contact Evans to inform her that he intended to

5 contact CPS or file lawsuits against her if McAllister did not contact Evans.), Ex. F (Evans

6 posted a picture of McAllister's application for a protection order (in which she stated Evans

7 threatened to file multiple lawsuits against her), stating "It's almost like that's not a threat

8 since it's the 7th amendment. And two that piece of paper didn't protect you from a lawsuit."),

9 Ex. G ("2 lawsuits, 2 pending. Lets go."), Ex. Y ("And bun bun this is only fueling me. Now

10 that you fucked up my birthday, ya, that's not good."), Ex. P ("Am forgiving but haven't been

11 asked. Also 100K-500K within 7 years to spend is so steep."), Ex. R ("People don't seem to

12 know they can drop a protection order without any fault/consequences to them."), Ex. T

13 ("Apparently two lawsuits are not enough for you, so you get a third. And yes this is going

14 to keep going."),  Ex. AA ("time to file the defamation in another court.  Oh I wonder what

15 court that'll be bun bun") and Ex. AB ("The bun bun not taking the offer, will be looking at

16 moving the defamation case to the bun bun state.").  Indeed, Evans specifically stated, "Hm,

17 offer is valid for 30 days. *Drop the order, I drop the case in relation to said order. Then*

18 *modify my order to open a line of communication*.").  Motion, Ex. X, *emphasis added*, Ex.

19 Z ("Medical people are weird 'What is your motivation?'  Me:  "Revenge.'").

20        The Court finds Evans' pursuit of the claims against McAllister were primarily for

21 delay or harassment.  The Court finds an award of attorney's fees pursuant to A.R.S. § 12-

22 349.A.2. is appropriate.

23

24 VII.  *Reasonable Attorney's Fees*

25        A request for attorney's fees must be reviewed for reasonableness.  *See e.g.*, LRCiv

26 54.2(c)(3).  The lodestar method is used to assess an award of attorney's fees.  *See Six*

27 *Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990).  The number

28

of hours a lawyer reasonably spent on the case is multiplied by a lawyer's reasonable hourly rate. *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989); *see also Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996). "Although the lodestar figure is presumptively reasonable, the court may adjust that figure to account for factors 'that are not already subsumed in the initial lodestar calculation.'" *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 485 (D. Ariz. 2019), *citation omitted*.

Factors that may be considered in determining whether attorney's fees are reasonable include:

(A) The time and labor required of counsel;

(B) The novelty and difficulty of the questions presented;

(C) The skill requisite to perform the legal service properly;

(D) The preclusion of other employment by counsel because of the acceptance of the action;

(E) The customary fee charged in matters of the type involved;

(F) Whether the fee contracted between the attorney and the client is fixed or contingent;

(G) Any time limitations imposed by the client or the circumstances;

(H) The amount of money, or the value of the rights, involved, and the results obtained;

(I) The experience, reputation and ability of counsel;

(J) The "undesirability" of the case;

(K) The nature and length of the professional relationship between the attorney and the client;

(L) Awards in similar actions; and

(M) Any other matters deemed appropriate under the circumstances.

LRCiv 54.2(c); *see also Morales*, 96 F.3d at 363, n.8.

A.  *Time and Labor, Novelty, Skill*

The request in this case includes .9 hours of labor by attorney Samantha DuMond at

- 13 -

1   $300/hour, 2.4 hours of labor by legal assistant Alina Santillan at $100/hour, 3.6 hours of

2   labor by paralegal Cody Hudson at $150/hour, and 36.3 hours of labor by law clerk Erin

3   Sweeney at $200/hour, for a total request of attorney's fees in the amount of $8310.[3]

4          This case had not yet reached a discovery phase, but required document production

5   and contact with the client.  The amount of time and labor is reasonable in light of the nature

6   of this litigation.  The Court recognizes McAllister filed unnecessary documents in light of

7   the Court's screening orders.  However, the Court also recognizes that the efforts made in

8   preparing the earlier documents affected the time needed to file similar motions later.  The

9   Court does not find this case was particularly difficult or complex, but the amount of time

10  and labor expended is reasonable in light of the nature of the litigation.

11

12          B.  *Customary Fee in Similar Matters / Reasonable Rate*

13          "In determining what constitutes a reasonable hourly rate, the Court looks to the

14  prevailing market rates in the relevant community 'for similar work performed by attorneys

15  of comparable skill, experience, and reputation.'"  *Sw. Fair Hous. Council v. WG Scottsdale*

16  *LLC*, No. CV-19-00180-TUC-RM, 2022 WL 16715613, at *4 (D. Ariz. Nov. 4, 2022) The

17  Court finds the requested rates of pay to be reasonable in the Tucson, Arizona, market.  *See*

18  *e.g. id*. (hourly rate of $425); *Bell v. VF Jeanswear LP*, No. CV-14-01916-PHX-JJT, 2019

19  WL 1409433 (D. Ariz. Mar. 28, 2019), *aff'd in part, rev'd in part and remanded*, 819 F.

20  App'x 531 (9th Cir. 2020); (hourly rate of $515); *Everts v. Sushi Brokers LLC*, No.

21  CV-15-02066-PHX-JJT, 2018 WL 3707923, at *2 (D. Ariz. Aug. 3, 2018) ($280 per hour

22  for a senior partner, $240 per hour for associates); *Davis v. White Mountain Communities*

23  *Hosp., Inc.*, No. 3:15-CV-8080-HRH, 2016 WL 1578747, at *2 (D. Ariz. Apr. 19, 2016)

24  (hourly rate of $220); *Ameriprise Fin. Servs. Inc. v. Ekweani*, No. CV-14-00935-PHX-DGC,

25  2015 WL 3823302, at *3 (D. Ariz. June 15, 2015), *aff'd*, 683 F. App'x 641 (9th Cir. 2017)

26

27          [3]The request seeks $8330 for an attorney's fee award.  While acknowledging its
    calculation could be in error, the Court's calculation does not match that of McAllister's
28  request.

1    (hourly rate of $230).

2    The Court also consider the expertise of counsel. *See e.g., Sw. Fair Hous. Council*,

3    2022 WL 16715613, at *1, *citing Hensley v. Eckhart*, 461 U.S. 424, 429 (1976).  Counsel's

4    declaration does not establish that she has significant experience or expertise with this type

5    of case, but she is not requesting an unreasonable rate for this market.  Further, the rates for

6    labor expended for support staff is reasonable. *See e.g. Sw. Fair Hous. Council*, 2022 WL

7    16715613, at *5 (reasonable hourly rate for paralegals and law clerks is $125.00).

8    The Court also considers that counsel has not block billed in her itemized statement.

9    *See e.g. Advanced Reimbursement Sols. V. Spring Excellence Surgical Hosp., LLC*, No.

10   CV-17-01688-PHX-DWL, 2020 WL 2768699, at *6 (D. Ariz. May 28, 2020).

11

12   **C.** *Amount of Money / Value of Rights / Results Obtained*

13   Evans' original and amended Complaints sought financial damages in the amount

14   $80,000, as well as a written apology.  This matter was ultimately dismissed with no financial

15   or other award going to Evans.

16

17   **D.** *Claimed Unnecessary Motion Practice*

18   McAllister asserts Evans engaged in unnecessary motion practice.  Indeed, during the

19   litigation, McAllister sought to strike motions filed by Evans.  *See* Motion to Strike (Doc.

20   16).  The Court ultimately dismissed some of Evans' motions as not ripe.  McAllister argues

21   this motion practice shows Evans engaged in vexatious and harassing litigation.  The Court

22   finds McAllister's argument to be well-taken and finds Evans engaged in harassing tactics.

23

24   **E.** *Conclusion*

25   Considering the nature of this action, the motivation for the litigation, and the relevant

26   factors cited herein, the Court finds it appropriate to grant McAllister's request for an award

27   of reasonable  attorney's fees in the amount of $8310.00.

28

VIII. *Costs*

"Unless a federal statute, [the Federal Rules of Civil Procedure], or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." Fed.R.Civ.P. 54(d)(1). "Rule 54(d) creates a presumption in favor of awarding costs to prevailing parties, and it is incumbent upon the losing party to demonstrate why the costs should not be awarded." *Stanley v. Univ. of S. Cal.*, 178 F.3d 1069, 1079 (9th Cir. 1999). Here, McAllister seeks an award of costs in the amount of $7.46 and Evans has not shown McAllister is not entitled to costs. The Court finds an award of costs in the amount of $7.46 is appropriate.

Accordingly, IT IS ORDERED:

1.      The Motion for Award of Attorney's Fees and Costs (Doc. 54) is GRANTED.

2.      McAllister is awarded attorney's fees in the amount of $8310.00. McAllister is awarded costs in the amount of $7.46, for a total award of $8317.46.

3.      The Clerk of Court shall enter an amended judgment against Evans and in favor of McAllister for attorney's fees in the amount of $8310.00 and costs in the amount of $7.46.

4.      Interest shall accrue on the money judgment, with it being calculated from the date of the entry of the judgment. *See* 28 U.S.C. 1961.

DATED this 8th day of January, 2024.

Cindy K. Jorgenson
United States District Judge